## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENT O. EZEIRUAKU, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 90-5773 |
| UNITED STATES OF AMERICA, | : | |
| (Re: U.S. v. $267,552 in U.S. Currency) | : | |
| Defendant. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**  JANUARY 8, 2010

Presently before this Court is pro se Petitioner Vincent O. Ezeiruaku's ("Petitioner") Motion for Relief Pursuant to Federal Rule of Civil Procedure 60(b).[1] For the reasons that follow, the Motion is denied.

---

[1]Federal Rule of Civil Procedure 60(b) states:

> Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

**I.     BACKGROUND**

Having exhausted appeals seeking to overturn the April 24, 1995 forfeiture of $267,552 seized from him on April 18, 1990 when Petitioner attempted to leave the country without reporting it, Petitioner has filed yet another Motion pursuant to Rule 60(b), alleging that the Supreme Court decision in Santos v. United States, 128 S. Ct. 2020 (2008) rendered the forfeiture in this case invalid.

The factual and lengthy procedural history of this case are detailed in this Court's opinions in United States v. Two Hundred and Sixty-Seven Thousand, Five Hundred and Twenty-Two Dollars in United States Currency, No. 90-5773, 1998 WL 546850, at *1 (E.D. Pa. Aug. 27, 1998), and Ezeiruaku v. United States, No. 00-2225, 2000 WL 1751077, at *1 (E.D. Pa. Nov. 29, 2000), as well as in the Third Circuit opinion in the related criminal case, United States v. Ezeiruaku, 936 F.2d 136 (3d Cir. 1991). In summary, on April 18, 1990, Petitioner was arrested at Philadelphia International Airport after Customs Inspectors discovered some $265,000 in unreported currency wrapped in $2000 packs of twenty-dollar bills, separately wrapped in carbon paper, in his checked luggage. Despite acknowledging hearing the announcement from a Lufthansa representative requiring all passengers on the international flight to file a Customs form if they were carrying more than $10,000 in currency out of the country, Petitioner falsely denied having more than $10,000 either on his person or in his luggage. Id. at 138.

On May 15, 1990, a criminal indictment was returned charging Petitioner with attempting to cause the transportation of currency in excess of $10,000 to various points outside the United States without filing the required United States Customs currency report in violation of 31 U.S.C. §§ 5316(a)(1)(a) and 5322(a). On October 28, 1991, Petitioner pleaded guilty to this offense. On

September 6, 1990, the United States filed a civil forfeiture complaint against the $267,522.00 in unreported currency recovered from Petitioner's luggage and person. On September 18, 1990, Petitioner filed a claim for return of the currency. This civil forfeiture action was stayed pending resolution of the criminal charges. On February 4, 1994, while returning to the United States from Nigeria, Petitioner was arrested at Kennedy International Airport for conspiracy to distribute 15 grams of heroin. On December 9, 1994, Petitioner's counsel filed a motion on Petitioner's behalf to dismiss the forfeiture claim. This motion was granted on January 4, 1995. The United States filed an uncontested motion for an order of forfeiture which was granted on April 24, 1995.

Subsequently, Petitioner began filing a series of motions and appeals seeking to vacate the forfeiture. This Court held an evidentiary hearing on June 12, 1998, at which both Petitioner and his former counsel testified. On August 27, 1998, this Court made extensive findings of fact and conclusions of law, denying Petitioner's Motion to Vacate the Forfeiture Order. See generally Two Hundred and Sixty-Seven Thousand, Five Hundred and Twenty-Two Dollars in U.S. Currency, 1998 WL 546850. Petitioner appealed the decision and the Third Circuit affirmed. Petitioner then filed a civil complaint against both the United States and his former counsel on May 1, 2000, essentially attempting to relitigate the same issues. This Court granted the United States' Motion for Summary Judgment and dismissed the complaint against Petitioner's former counsel on November 29, 2000. See generally Ezeiruaku, 2000 WL 1751077. Once again, Petitioner unsuccessfully appealed to the Third Circuit. Having failed in these appeals, Petitioner now seeks to reopen this long resolved forfeiture action contending that the Supreme Court's decision in Santos deprived this Court of jurisdiction to consider the

forfeiture.  His reliance on Santos, however, is misplaced and his argument must fail.

## II. DISCUSSION

It is well established in this Circuit that a motion under Rule 60(b) is committed to the sound discretion of the district court and should only be granted in extraordinary circumstances where an extreme and unexpected hardship would occur.  Lasky v. Cont'l Prods Corp., 804 F.2d 250, 256 (3d Cir. 1986); Camponovo v. Uwaydah, No. 02-3661, 2004 WL 1849630, at *1 (E.D. Pa. Aug. 17, 2004).  In determining whether the judgment should be set aside under Rule 60(b), the court must consider: (1) the danger of prejudice to the non-movant; (2) the length of the delay and the potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith.  In re Cendent Corp. Prides Litig., 235 F.3d 176, 182 (3d Cir. 2000).

Here, Petitioner has clearly failed to establish a basis for relief under Rule 60(b).  The $267,522.00 in unreported currency at issue was seized more than nineteen years ago, and forfeited on April 24, 1995, more than fourteen years ago, after Petitioner withdrew his claim in the forfeiture action.  Petitioner's motion to Vacate the Forfeiture was denied more than eleven years ago, on August 27, 1998, and his civil suits were dismissed in 2000.  The prejudice to the United States in attempting to resurrect facts in a case this old is apparent.  It is unknown which, if any, of the United States witnesses remain available or have adequate recollection of the underlying facts supporting the forfeiture.  More importantly, Petitioner has failed to demonstrate any extraordinary circumstances or hardship to warrant the relief sought.

Despite having pleaded guilty to the criminal charge arising from his attempt to transport the $267,552 without reporting it on the requisite forms, and having withdrawn his claim in the forfeiture action, Petitioner seeks to overturn the judgment in this case by contending that the

4

Supreme Court's analysis in Santos of the meaning of the word "proceeds" in the money laundering context deprived this Court of jurisdiction over the forfeiture. Petitioner's reliance on Santos, however, is misplaced.

In Santos, the Court in a 4-1-4 plurality decision, held that the term "proceeds" as used in the federal money laundering statute, 18 U.S.C. § 1956(a)(1)(A)(I), meant "net profits," not "gross proceeds." Santos, 128 S. Ct. at 2021. The statute at issue in Santos was not a forfeiture statute, but rather a money laundering statute that made it a crime "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, [to] conduct [] such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity." 18 U.S.C. § 1956(a)(1). The alleged money laundering transaction in Santos was an illegal lottery operator's payments of his winners and workers using receipts of the illegal lottery. The money laundering statute at issue at the time, failed to define the term "proceeds."[2] As a result, the divided Court struggled with the definition of the term "proceeds" for purposes of that statute. A four-justice plurality concluded that the word "proceeds" as used in the statute meant profits and not gross receipts as argued by the United States. The plurality was concerned that absent a profits definition, the United States could charge promotion money laundering where the alleged money laundering transaction was a normal part of the underlying specified unlawful activity, resulting in a merging of the money laundering offense with the proceeds-generating crime. Four

---

[2]Effective May 20, 2009, Congress amended the money laundering statutes to define "proceeds" to mean "any property derived from or obtained or retained, directly or indirectly through some form of unlawful activity, including the gross receipts of that activity." 18 U.S.C. § 1956(c)(9), Pub. L. 111-21, 123 Stat. 1617 (2009).

dissenting justices took the position that the word "proceeds" in the money laundering statute meant the gross receipts of the underlying offense. This resulted in the Court being evenly divided on whether proceeds means profits in all cases or gross receipts. The split was resolved by the concurring opinion of Justice Stevens in which he took the position that proceeds may mean profits as applied to some specified unlawful activities and gross receipts as applied to others. Id. at 2022.

None of the issues that troubled the Court in Santos are present in the instant case, nor does the analysis there have any relevance here. The forfeiture statute utilized to forfeit the currency in the instant case, 31 U.S. C. § 5317(c)(2), does not rely on any definition of "proceeds" to justify the forfeiture. This section provides:

> (2) Civil Forfeiture. - Any property involved in a violation of section 5313, 5316, or 5324 of this title, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy, may be seized and forfeited to the United States in accordance with the procedures governing civil forfeitures in money laundering cases pursuant to section 981(a)(1)(A) of title 18, United States Code.

31 U.S.C. § 5317(c)(2).

The plain language of the statute makes clear that what is forfeitable is the property involved in the criminal violation. In this case, that is the $267,552 in United States currency that Petitioner attempted to take out of the United States without declaring it on the requisite forms. The concept of proceeds has absolutely no bearing on this analysis. Petitioner cites 18 U.S.C. § 981 as the forfeiture statute utilized here. He is mistaken.

As noted above, the forfeiture here was pursuant to 31 U.S.C.§ 5317(c)(2). It is only the procedures of § 981(a)(1)(A) that are utilized in forfeiting under § 5317(c)(2). These procedures

do not require any analysis of the term "proceeds" for purposes of applying it to forfeitures under § 5317(c)(2). While many forfeiture statutes do rely on a "proceeds" analysis, that is not the case here. Even in those cases, however, Santos has no bearing, because unlike the former money laundering statute at issue in that case which failed to define "proceeds," 18 U.S.C. § 981(a)(2) provides a clear definition of the term "proceeds" in the forfeiture context. See United States v. Yass, 636 F. Supp. 2d 1177, 1183 (D. Kan. 2009) (finding that Santos only applies in money laundering cases, in forfeiture cases the definition in § 981(a)(2) applies); United States v. Peters, 257 F.R.D. 377, 388 (W.D. N.Y. 2009) (holding that Santos does not apply in forfeiture cases). It is for these reasons we issued our Order of December 29, 2009 (Doc. No. 52) denying Petitioner's Motion.